NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **CORINNE MYERS,** | : | **Civil Action No. 13-4712 (DMC)** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **MEMORANDUM OPINION** |
| | : | |
| **ATLANTIC HEALTH SYSTEMS, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**CLARK, Magistrate Judge**

This matter comes before the Court upon Defendants Atlantic Health Systems d/b/a

Morristown Medical Center, Joseph Pasquarosa and Dorothy Zarillo's ("Defendants") motion to

dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) [Docket Entry No. 5]. Plaintiff Corinne

Myers ("Plaintiff") opposes Defendants' motion and has cross-moved to amend her complaint.

[Docket Entry No. 8]. The Court has fully reviewed and considered all arguments made in

support of, and in opposition to, both motions. The Court considers both motions without oral

argument pursuant to L.CIV.R. 78.1(b). For the reasons set forth more fully below, Plaintiff's

motion is GRANTED IN PART and DENIED IN PART and it is RECOMMENDED that

Defendant's motion be GRANTED IN PART.

## I.    BACKGROUND

This case was brought pursuant to 42 U.S.C. §1983 and the Americans with Disabilities

Act ("ADA"), 42 U.S.C. §12101, *et seq.*, as well various state law and common law claims in

connection with the termination of Plaintiff from her position as a Registered Nurse ("RN") at

Morristown Medical Center ("MMC"), which is owned by Defendant Atlantic Health Systems

("AHS"). *Compl.* at ¶1; Docket Entry No. 3.   Plaintiff was employed full-time by AHS from 2001 to 2009. *Id.* at ¶4.   Defendant Zarillo was Plaintiff's manager during her employment there. *Id.* at ¶5.   Plaintiff alleges that during her employment with AHS, she and Defendant Zarillo developed an "antagonistic relationship" which was brought on by several incidents. *Id.*   For instance, Plaintiff alleges that Zarillo improperly assigned her to a division of the Surgical Floor where patients "were connected to monitors and machines on which Plaintiff had not been trained and [with which] she did not feel herself qualified or competent to work…without prior training." *Id.* at ¶7.   Plaintiff alleges that "[t]here was a great deal of dissatisfaction among the nursing staff with Defendant Zarillo" and that eventually, a letter submitted by the nurses complaining of her, and Zarillo was subsequently disciplined. *Id.* at ¶10.   Plaintiff states that she did not send the letter but that "[i]t was a common belief among the…nursing staff that Plaintiff has been the author of the letter." *Id.*   The bulk of Plaintiff's complaint, however, stems from an incident regarding Plaintiff's distribution of the drug Dilaudid to a patient.

Plaintiff states that on October 20, 2012, Plaintiff was caring for a patient, R.L, "who was recuperating from abdominal surgery" and who had a drip of Dilaudid for pain control. *Id.* at ¶12. Around 10:00am that morning, Plaintiff noticed that R.L.'s drip bag was empty and so she went to the Pyxis machines to get more. *Id.* at ¶12-13.   Plaintiff claims that, pursuant to hospital protocol, she "began removing 1mg Dilaudid syringes from the Pyxis machine for R.L." and further, that she properly noted each removal and that another RN witnessed her taking it. *Id.* at ¶14.   On November 8, 2012, Plaintiff alleges that she was "confronted at work by the head of security, and was advised that 'there was an issue with the Pyxis machine.'" *Id.* at ¶16.   She further claims that she was suspended without pay at this point, pending an investigation. *Id.*   On November 14,

2012, Plaintiff reported to the security office at MMC, where she met with Defendant Zarillo and Defendant Pasquarosa, MMC's Investigator. *Id.* at ¶17. At this point, Defendant Pasquarosa told Plaintiff that the "investigation showed that she had apparently been diverting prescription medications on October 20." *Id.* Plaintiff alleges that she was confined in that room for three hours and was pressured into admitting to taking to the drugs herself, for fear of losing her "job, license, career and pension[.]" *Id.* Plaintiff alleges that Pasquarosa "told her that if she would admit to it, they would put her into the RAMP (Recovery And Monitoring Program, run by the New Jersey Board of Nursing)[.]" *Id.* Plaintiff claims that she admitted to taking the drugs under duress, was admitted to RAMP, and subsequently terminated. *Id.* at ¶20. Plaintiff states that Defendants forced her into RAMP and in so doing, "Defendants were acting as the agents of the New Jersey State Board of Nursing…and as such were acting under color of state law." *Id.* at ¶19.

## II.    LEGAL STANDARDS

### A.  Motion to Amend

Under Federal Rule of Civil Procedure 15(a)(1), "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it; or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Otherwise, pursuant to Rule 15(a)(2) "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

Pursuant to FED.R.CIV.P. 15(a)(2), leave to amend the pleadings is generally granted freely. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad

faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id.*   However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).   The Third Circuit has recognized that "prejudice to the non-moving party is the touchstone for the denial of an amendment." *Arthur v. Maersk, Inc*., 434 F.3d 196, 204 (3d Cir. 2006) (quoting *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)) (internal quotations omitted).   "Delay alone is not sufficient to justify denial of leave to amend…When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied." *Id.* (internal citations omitted).

An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face."   *Harrison Beverage Co. v. Dribeck Imp., Inc.,* 133 F.R.D. 463, 468 (D.N.J. 1990) (internal quotation marks and citations omitted).   To evaluate futility the District Court uses "the same standard of legal sufficiency" as applied for a motion to dismiss under Rule 12(b)(6). *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).   "Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency." *Id.*

### B.  Motion to Dismiss

The Supreme Court refined the standard for summary dismissal of a complaint that fails to state a claim in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).   The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain

statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2).[1]

Citing its opinion in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007), for the proposition that "[a]

pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of

action will not do,'" *Iqbal,* 129 S. Ct. at 1949 (quoting *Twombly,* 550 U.S. at 555), the Supreme

Court identified two working principles underlying the failure to state a claim standard.

> First, the tenet that a court must accept as true all of the allegations contained in a
> complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of
> a cause of action, supported by mere conclusory statements, do not suffice .... Rule 8
> ... does not unlock the doors of discovery for a plaintiff armed with nothing more
> than conclusions. Second, only a complaint that states a plausible claim for relief
> survives a motion to dismiss. Determining whether a complaint states a plausible
> claim for relief will ... be a context-specific task that requires the reviewing court to
> draw on its judicial experience and common sense. But where the well-pleaded facts
> do not permit the court to infer more than the mere possibility of misconduct, the
> complaint has alleged--but it has not "show[n]"--"that the pleader is entitled to
> relief." Fed. R. Civ. P. 8(a)(2).

*Iqbal,* 129 S. Ct. at 1949-1950 (citations omitted). The Court further explained that:

> a court considering a motion to dismiss can choose to begin by identifying pleadings
> that, because they are no more than conclusions, are not entitled to the assumption of
> truth. While legal conclusions can provide the framework of a complaint, they must
> be supported by factual allegations. When there are well-pleaded factual allegations,
> a court should assume their veracity and then determine whether they plausibly give
> rise to an entitlement to relief.

*Id.* at 1950.

Thus, to prevent a summary dismissal, a civil complaint must allege "sufficient factual

matter" to show that the claim is facially plausible. *Id.* at 1949. This then "allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The

Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must demonstrate that the allegations of

his complaint are plausible. *Id.* at 1949-50.

---

[1] Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct. No technical form is required."
FED.R.CIV.P. 8(d).

## III.    DISCUSSION

### A.  Motion to Dismiss

Defendants have moved to dismiss the first and eighth counts of Plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6), claiming that Plaintiff has failed to state a claim under either the ADA or 42 U.S.C. §1983.   Further, Defendants argue that, should this Court dismiss Plaintiff's federal claims, then the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining pendant state law claims.   The Court shall address each of Defendants' arguments in turn.

#### 1.   Plaintiff's ADA claim

Defendants' first argument attacks Plaintiff's claims brought pursuant to the ADA, claiming that Plaintiff has failed to exhaust her administrative remedies as required by the ADA, and further that there is no individual liability under the ADA. *Defendant's Brief in Support* at 1; Docket Entry No. 5-1.   However, as the parties are aware, both arguments have since been rendered moot.   The Defendants have voluntarily withdrawn the portion of their motion that sought to dismiss Plaintiff's ADA claim for failure to exhaust remedies (*see* Docket Entry No. 6) and Plaintiff has voluntarily dismissed her ADA claim against individual Defendants Pasquarosa Zarillo (*see* Docket Entry No. 7).   As such, the Court need not discuss the sufficiency of Plaintiff's complaint in this respect.

#### 2.   Plaintiff's §1983 claim

Defendants secondly contend that Plaintiff has failed to state a claim pursuant to 42 U.S.C. §1983, arguing that Defendants cannot be held liable as they were not acting under color of state law.   Section 1983 does not create substantive rights; rather, it provides an avenue of recovery for

the deprivation of established federal constitutional and statutory rights. *See Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996); s*ee also Groman v. Twp. of Manalapan,* 47 F.3d 628, 638 (3d Cir. 1995) ("The color of state law . . . is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law.")   "The color of state law element in a section 1983 action requires that 'the conduct allegedly causing the deprivation of [the plaintiff's rights] be fairly attributable to the State.'" *Abebe v. Abebe*, 2010 U.S. Dist. LEXIS 50965 at *10 (D.N.J. May 24, 2010), quoting *Lugar v. Edmondson Oil Co*., 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982).   For the conduct to be "fairly attributable" to the state, (1) the deprivation must be caused by (a) the exercise of some right or privilege created by the state or (b) by a rule of conduct imposed by it or by a person for whom the State is responsible, and (2) the defendant must be a person who may fairly be said to be a state actor, either because the person (a) is a state official, (b) acted together with or has obtained significant aid from state officials, or (c) performed conduct otherwise chargeable to the state. *Lugar,* 457 U.S. 922, 936-39.

In the context of private entities, the Third Circuit has held that, although a private entity may serve a public function, this fact is insufficient to constitute state action. *Benn v. Universal Health Sys.*, 371 F.3d 165, 173 (3d Cir. 2004).   Instead, there is a requirement that "the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Groman,* at 638, quoting *West v. Atkins,* 487 U.S. 42, 49 (1988).   Furthermore, a private entity that complies with state law is not converted into a state actor for purposes of Section 1983. *See Mueller v. Auker,* 700 F.3d 1180, 1191-1192 (9th Cir. 2012); *see also Brown v. Newberger,* 291 F.3d 89, 93 (1st Cir. 2002) ("Nothing seems more counterintuitive to us than to reason that a statute which protects one who complies

from civil or criminal actions under state law should be the vehicle for subjecting the actor to liability under federal law.")

Defendants argue that AHS was subject to the New Jersey Health Care Professional Responsibility and Reporting Enhancement Act, N.J.A.C. 13:45E-3.1(a)(1)(iii), which requires a health care entity to report any staff discharges "for reasons relating to the health care professional's impairment, incompetency or professional misconduct, which incompetency or professional misconduct relates adversely to patient care or safety." *Deft. Br. Supp.* at 16. In this regard, Defendants argue that AHS complied with same when it reported Plaintiff's termination to the New Jersey Board of Nursing and that such compliance cannot be considered state action. *Id.* at 17. Further, Defendants contend that RAMP is a voluntary program run by the New Jersey Board of Nursing, with "no nexus to AHS or any other private entity."[2] *Id.* at 19. Defendants assert that "AHS has no power or authority to compel any person to enter RAMP, let alone on behalf of the State Board of Nursing" and that "Plaintiff voluntarily enrolled in the RAMP program[.]" *Id.* Lastly, Defendants argue that Plaintiff "does not and cannot alleged that either of the named individual defendants…are state actors or that they played any role in the reporting process[.]" *Id.* at 17, n.4. As such, Defendants submit that the facts fail to properly allege that Defendants acted under color of state law, and thus Plaintiff's claim must be dismissed.

Plaintiff concedes that "all Defendants are private actors", but argues that state action can be found when there is a "symbiotic relationship" between the private actor and the state, and that such a relationship is present here. *Plaintiff's Brief in Opposition* at 3; Docket Entry No. 7.

---

[2] Indeed, Defendant urges this Court to take judicial notice of this fact. For purposes of this motion, the Court relies only on what is pled in the complaint and whether such pleading is sufficient under the applicable standard. As such, the Court declines to take judicial notice at this time.

Plaintiff argues that Defendants were empowered by the state to place Plaintiff into RAMP, and thus, were acting under color of state law. *Id.*

The Court finds that Plaintiff's claim pursuant to Section 1983 must fail. Plaintiff merely makes the conclusory allegation that "Defendants were acting as the agents of the New Jersey State Board of Nursing in its licensing function, and as such were acting under color of state law." *Compl.* at ¶19. However, it is well-settled that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" for purposes of plausibility under Fed.R.Civ.P. 12(b)(6). *Iqbal,* 129 S. Ct. at 1949-1950. Plaintiff's claim that Defendants forced her into RAMP is irrelevant with respect to state action. Even if Defendants placed Plaintiff into a program run by a state actor, the Board of Nursing, such conduct does not constitute state action without AHS being "clothed with the authority of state law.'" *Groman,* at 638. Where a private actor is alleged to be liable under Section 1983, the action complained of must be one "exclusively reserved to the State." *Gipson v. Supermarkets General Corp.*, 564 F. Supp. 50, 54 (D.N.J. Feb. 7, 1983). Indeed, although the Court has made no finding as to the voluntary nature of the program, the Court notes that Plaintiff has not argued that the program is not voluntary and it appears that even the Board of Nursing cannot act to place someone in RAMP. As such, the Court finds that Plaintiff has failed to properly allege that AHS is a state actor and thus, Plaintiff complaint is subject to dismissal.

The Court makes no findings at this time as to whether AHS was subject to the New Jersey Health Care Professional Responsibility and Reporting Enhancement Act. For purposes of this motion, it suffices that Plaintiff has simply failed to plead any nexus between the state and AHS

such that this Court would be able to conclude that AHS was plausibly acting under color of state law.

### 3. Plaintiff's state law claims

In light of the fact that Plaintiff's ADA claim remains active in this case as against AHS, the Court finds that it retains subject matter jurisdiction over this case and that Defendant's arguments with respect to supplemental jurisdiction are therefore rendered moot and should be DENIED as such.

## B. Motion to Amend

Plaintiff has cross-moved to amend her complaint to make four substantive changes. The first change is the dismissal of Plaintiff's ADA charges as against the individual Defendants, as discussed above, to reflect that it is being asserted against AHS alone. This proposed amendment is GRANTED. The second involves an aiding and abetting allegation under her LAD claim, and the last two involve proposed curative changes to her claim under Section 1983. The Court shall discuss each in turn.

### 1. Aiding and Abetting under LAD

Plaintiff seeks to amend her LAD claim to add paragraph 27A which alleges that "[t]he individual Defendants are liable under LAD as aiders and abettors." *Proposed Amended Complaint* at ¶27A; Docket Entry No. 8-1. Plaintiff has made no other changes to the factual allegations supporting her LAD claim and provides no substantive argument in her brief as to why her cross-motion to amend is proper, stating only that "Plaintiff's amended pleadings (*sic*) makes her allegations more specific and clear, but adds no new substantive material." *Pltf. Br. Opp.* at 2. Defendant argues that Plaintiff's amendment "is nothing more than a 'conclusion' or 'formulaic

recitation of the elements of a cause of action', which is not sufficient to survive a motion to dismiss." As such, Defendants submit that Plaintiff's amendment is futile and should be denied.

The Court agrees with Defendants' analysis. Plaintiff's sole change is the addition of paragraph 27A which was not accompanied by any changes in factual allegations, nor any substantive argument on its propriety. Plaintiff's request to amend her LAD claim is DENIED.

### 2. Proposed Amended §1983 Claim

Plaintiff seeks to amend her §1983 claim by adding two additional allegations. The first is the amendment of paragraph 23 to read:

> Although Plaintiff **was placed into RAMP by Defendants, or some of them, acting as agents of the New Jersey Board of Nursing, a state actor, and not directly by said Board, and was** designated to attend RAMP for five (5) years; she was discharged from the program after six months; the Director found that it was clear that she had no issues with substance abuse.

*Prop. Am. Compl.* at ¶23. (emphasis in the original). Plaintiff's second change is to paragraph 42 and reads:

> All licensed nurses who have been designated to RAMP must report this fact to any prospective employer, and there are restrictions on the terms and conditions under which they may be employed. **This restriction substantially impairs the value of Plaintiff's nursing license.**

*Id.* at ¶42. (emphasis in the original).

For the reasons set forth above, Plaintiff's first change fails to cure the deficiency in her claim. As previously discussed, whether Defendants placed Plaintiff into RAMP is irrelevant and additionally, alleging that Defendants are acting as agents of the New Jersey Board of Nursing is simply a conclusory statement. Plaintiff's motion to amend paragraph 23 is DENIED. Because Plaintiff has failed to make the threshold showing of state action required by §1983, the Court need not address whether Plaintiff's second substantive change, regarding her alleged deprivation of an

interest protected by the Fourteenth (14th) Amendment, is proper. Plaintiff's §1983 claim should be dismissed in its entirety.

**IV.    CONCLUSION**

For the reasons set forth above, Plaintiff's Motion to Amend is GRANTED IN PART and DENIED IN PART and it is respectfully RECOMMENDED that Defendants' motion be GRANTED IN PART and that the District Court dismiss Plaintiff's §1983 claim. An appropriate Order and Recommendation shall follow this Opinion.


Dated: February 4, 2014


s/   James B. Clark, III
**HONORABLE JAMES B. CLARK, III**
**UNITED STATES MAGISTRATE JUDGE**